# Margaret Disbrow, Plff. in Err., v. Township of Ulster.

In an action to recover for a death caused by the negligence of defendant, held, that evidence that the deceased, a short time before his death, said that he was tired of life and did not care nor want to live; that his life had been a failure, and evidence tending to show that he was a habitual drunkard, had such a bearing on the value of the decedent's life to his family, and of his probable care for its preservation, as to be admissible, and to be considered by the jury on the question of damages.

(Argued March 16, 1887. Decided March 28, 1887.)

January Term, 1887, No. 28, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas of Bradford County to review a judgment on a verdict for plaintiff for $100 damages in an action to recover for the death of plaintiff's husband alleged to be caused by the negligence of defendant. Affirmed.

The facts are stated in the charge to the jury given below.

At the trial the defendant offered to prove that deceased, a short time before his death, said in effect that he was tired of life and didn't care how soon nor how he would leave this life; that, on being reprimanded for careless driving, his reply was that he did not care nor want to live, or words to that effect; that his life had been a failure and his family was a failure. This offer was made for the purpose of showing recklessness and carelessness on his part. It was objected to by plaintiff, because not competent to prove such facts between parties to this action. Objection overruled. Offer admitted. Exception noted.

The court refused to admit evidence of previous accidents on the road in question similar to the one in which Disbrow met his death.

The court overruled objections by plaintiff, and admitted evidence tending to show that the deceased was a habitual drunkard, such evidence consisting of narrations of particular instances.

Note.—Evidence of intoxication is admissible to show that plaintiff was guilty of contributory negligence (Munley v. Hull, 3 Lack. Jur. 277; Hershey v. Mill Creek Twp. post. 459; Linton v. Chester, 1 W. N. C. 192; or to show that defendant was negligent (Wynn v. Allard, 5 Watts & S. 524).

MORROW, P. J., charged the jury, *inter alia,* as follows:

The undisputed evidence shows that O. H. P. Disbrow died on the night of the third of June, 1883, at the age of fifty years, leaving to survive him Margaret Disbrow, his widow, the present plaintiff, and two children, Theodore and Lois. His family had resided in this borough for many years, and he kept a hotel in the first ward, and for a year or more before his death had spent a considerable portion of his time on his farm in Ulster township, frequently passing over the road in question, going to and returning from his farm. On the afternoon of Sunday, June 3, he came to Towanda and started back to Ulster in the evening, and some time after 11 o'clock that night his dead body was found lying in the ditch on the west side of the railroad, by the track walker, Mr. Carroll. A dead horse and some fragments of a wagon were found lying near by.

It was subsequently ascertained, from an examination of the ground, that in going along the road called the Ulster Narrows he had gone off at a point indicated by the evidence, where the mountain is very steep and precipitous on the lower side of the road, the distance from the highway where he went off to the railroad where he was found being in the neighborhood of 300 feet or more. It is not disputed that Mr. Disbrow was killed by going off from the east side of the public highway and falling down this mountain side; and this action is brought by his widow, Margaret Disbrow, for the benefit of herself and the two children, against the township of Ulster, to recover damages which she alleges the family has sustained by reason of the negligence of the township authorities in not maintaining sufficient guards or barriers along the road at the point where Mr. Disbrow went off, which negligence, it is alleged by the plaintiff, was the sole cause of her husband's death; and this negligence is the foundation of the plaintiff's right to recover.

If there was no negligence on the part of the defendant, the plaintiff cannot recover. And even if there was negligence upon the part of the township officers, and the jury should find that the road was insufficiently guarded and unsafe at the point where this accident occurred, still the plaintiff cannot recover if there was any negligence on the part of Mr. Disbrow which in any degree contributed to the accident. Therefore the plaintiff's right to recover depends upon two facts: first, the existence of

negligence on the part of the township authorities, and second, the absence of negligence on the part of Mr. Disbrow.

It was the duty of the township to keep the road in question in a safe condition for persons to pass over the same by night or by day, and to keep it, at all seasons, clear of all impediments for the easy and convenient passing of travelers. And, the road being along the face of a steep mountain, there should have been sufficient guards or barriers along the outside, to prevent travelers from driving or falling off. By reason of the proximity of this road to this precipice, it was the duty of the road commissioners to take extra precautions in order to secure the safety of the traveling public; and their omission to do so would constitute negligence on the part of the defendant.

The highway must be kept in such condition and repair that even skittish animals may be employed without risk or danger, and it is not enough that even by careful driving an accident may have been avoided. So that if the jury find that this road was not protected by a guard or barrier along the outside sufficient so that it was safe to be traveled at all times, then it was negligence on the part of the township officers, and the plaintiff may recover provided there was no negligence on the part of Mr. Disbrow himself which contributed to the accident resulting in the loss of his life.

On the part of the plaintiff they have called witnesses to show the condition of the road, and they claim that there were some stones thrown up as a guard or barrier on the outside, but that at the point where the horse went off the earth was merely raised a few inches and some loose stones piled on that little rise of ground on the outside.

On the part of the defense they have called witnesses to testify that at the point where the horse went over this wall was about two feet thick and one foot high, and that a horse to go over there at all must have been forced over, and they claim that this could not have occurred except through the act of Mr. Disbrow himself. The witnesses on the part of the plaintiff and the defendant agree substantially in this: that some 10 or 12 rods south of where the horse went off he went close to the mountain side on the west side of the road, and that they could easily trace his tracks on that side close to the rocks, down to a point nearly opposite to where he went off, and that then the horse went nearly straight across the road and went off. The testi-

mony of some of the witnesses on the part of the defense, who were there between 6 and 7 o'clock on the morning of the accident, would seem to show that the horse was going backwards at the time the accident occurred, and that the hind wheels of the wagon went over the bank first. Other witnesses are of a different opinion, and it is proper for you to consider all the evidence of the witnesses on both sides as bearing upon this question, so far as it may be important in the determination of this case.   .  .·  .

We have spoken to you in regard to the duties of the commissioners as to keeping this road in proper condition, and it was also the duty of Mr. Disbrow to exercise such care as a prudent man, having regard to all the surrounding circumstances, would take; that is, having regard to the character and condition of the road and the fact that it was known to him, as well as to the darkness of the night. If he failed to exercise such care and precaution it would be negligence on his part; and if such negligence contributed to the accident, then he cannot recover, even though you should find that the road was unsafe and dangerous and that the defendant was guilty of negligence.

If you find for the plaintiff, the measure of damages is the pecuniary loss suffered by the plaintiff and her children, without any *solacium,* that is, sorrow or distress of mind. That cannot enter in as an element of damage. Their loss is what the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his widow and children, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure. You will understand that in arriving at that amount, his personal expenses for the remainder of his life would have to be taken out of whatever sum he might have earned, as those would not have gone to his family.

The plaintiff's counsel have submitted certain points in writing, asking us to charge you as follows:   .  .  .

"2. That a road 20½ to 22½ feet wide, along a steep and precipitous mountain side between 200 and 300 feet to the bottom of the mountain, the outer side of the road being only 6 inches higher than the road bed and having a wall of loose

stones 1 foot high and 2 feet wide, is not a reasonably safe road for the traveling public."

*Ans.* The facts contained in this point have reference to the road in suit, and whether it was a reasonably safe road for the traveling public or not is a question for the jury, and it is submitted to you under the instructions contained in our general charge.

The jury returned a verdict for plaintiff for $100 damages, and plaintiff took this writ, assigning as error the admission and rejection of evidence as above noted and the refusal to affirm plaintiff's second point.

*B. M. Peck* and *D'A. Overton,* for plaintiff in error.—Carelessness on several different occasions would not prove carelessness on the night when plaintiff's intestate was killed. Frazier v. Pennsylvania R. Co. 38 Pa. 104, 80 Am. Dec. 467.

Compensation for loss of life is to be measured by the loss thereof to the parties entitled to compensation. Pennsylvania R. Co. v. Keller, 67 Pa. 300.

In estimating the value of life, that personal exertions may ever be required of its possessor or his possible want of capacity are not to be taken into account. Id.

*Davies & Hall* for defendant in error.

PER CURIAM:

The verdict of the jury establishes the negligence of the defendant and the absence of contributory negligence of the plaintiff. The only substantial question remaining is the measure of damages. That was a question for the jury, to which it was correctly submitted. The evidence of the defendant, received under objections, had such a bearing on the value of the decedent's life to his family, and of his probable care for its preservation, as to be considered by the jury.

Judgment affirmed.